BAKER, JUDGE:
The claimants brought this action for water damage to their real estate and personal property which they allege was the result of respondent’s inadequate drainage system and its negligent maintenance thereof. Claimants’ residence is located in Belleville, Wood County, West Virginia. The Court is of the opinion to deny the claim for the reasons stated more fully below.
Claimants’ Belleville home fronts on WV Route 68 which proceeds in a north-south direction. County Route 17, also referred to as Lee Creek Road, is to the south side of the claimants’ property. It proceeds in an east-west direction with an incline above the Peters’ property. There is an old railroad track just west ofWV Route 68 which runs parallel with WV Route 68. The Ohio River is west of the railroad tracks. The incident giving rise to this claim occurred throughout two days on June 28, 1998, and June 29, 1998. An extremely heavy rainfall occurred on the evening of June 28, 1998, and lasted into the early morning of June 29, 1998. This heavy rainstorm resulted in the flooding of claimants’ home and property which is the basis for a portion of the claim herein.
Claimants’ also allege that water accumulates on WV Route 68 in front of their home due to a lack of drainage and this water backs up onto their property causing a loss of gravel and earth. They have placed mounds of earth in their front yard to prevent further damage from this accumulation of water which usually occurs during heavy rain storms.
On the specific dates mentioned herein above, water allegedly-flowed from Lee Creek Road onto claimants’ property damaging the landscape, washing out sand and mulch, and destroying their flower gardens. The water eventually rose so high that it came into their home through the back door and quickly flowed throughout the first floor. The water damaged the living room and dining room floors and walls. It also damaged the kitchen floor and cabinets, as well as all the first floor dry-wall and insulation. Much of the dining room and living room furniture, along with some antiques, were damaged. Mr. Peters testified that the flood water was approximately six to eight inches deep inside the house and that it left a water mark wherever it flowed. The claimants along with some neighbors and friends were able to force the water out of the home quickly so as to avoid more serious damage. Claimants allege damages to their real estate and personal property in excess of $65,000.00 which amount also includes the purchase of additional property above their property.
Claimants contend that the respondent failed to provide and maintain a *54 proper drainage system along County Route 17. They allege that the respondent created a surface drainage problem by negligently diverting surface water from County Route 17 to flow north onto claimants’ property and flooding it. Allegedly, this has caused the water to overflow onto the claimants’ property every time there is a heavy rain. Mr. Peters testified that this problem began in 1990 when the respondent blacktopp ed C ounty Route 17 and replaced the old culverts underneath the road with new “diagonal culverts.” The claimants also allege that respondent did not have adequate drains in front of their home and adjacent to WV Route 68, and that the drains were placed in the wrong location. Specifically, claimants allege that there are only two drains at this location and these drains are inadequate to capture all of the water flowing from the hillside above the road, thus resulting in excess water flowing onto their property from WV Route 68.
Mr. Peters made changes to drainage structures on claimants’ property both prior to and after the June 28-29, 1998, flood. He testified that as far back as the summer of 1981 he was having flooding problems in his backyard. He made changes to the drainage system in his backyard. He graded it and filled it in with dirt between 1980 and the flood in 1998. In 1982, Mr. Peters also installed twenty-four inch culvert pipe from approximately ten feet from the southeast comer of his home to the edge of his original property line. Prior to the June 1998 flood, the water coming onto claimants’ property from County Route 17 flowed through the continuous twenty-four inch culvert pipe onto claimants’ property and then beneath the house through a twenty-four inch square concrete culvert which apparently was built beneath the foundation of the house during its original construction. Water also flows through a catch basin in the front northeastern corner of claimants ’ house and from there it flows westerly beneath WV Route 68 and the railroad tracks finally draining into the Ohio River. Mr. Peters testified that he purchased an additional piece of property in 1999 from a neighbor in an attempt to remedy what he believed to be one of the problems causing the flooding. This additional lot abuts claimants’ property above and to the east. This property purchase it was intended as a buffer area to the lot on which their home is built. Mr. Peters constructed a diversion ditch across the lot to channel the water coming from the Lee Creek hollow away from his backyard. He has not had any severe water problems since he took this action to protect their property.
The respondent’s position is that it did not cause the flooding of claimants home or property. It asserts that when it replaced two twenty-four inch culvert pipes underneath Route 17 in 1990 it did not contribute to the flooding. The respondent claims that it simply replaced the old pipes because they were rusting and damaged. Respondent asserts that Mr. Peters contributed to or caused his own flooding problem by making the changes to the drainage pipe and other structures and that these actions by claimants created or contributed to their own flooding problems due to changes made to the drainage system across their property. Respondent also asserts that the railroad company’s culvert is clogged up with debris and improperly maintained, which contributes to and causes the flooding on its highway, WV Route 68 as well as the water in claimants’ front yard. Furthermore, respondent asserts that the rainstorm on June 28 and 29, 1998, was an extremely heavy and unusual rainfall and that the claimants’ home would have been flooded regardless of whatever drainage system was in place.
The evidence adduced at the hearing established that the respondent replaced two culverts underneath County Route 17 in 1990 with two new twenty-four inch culvert pipes. The replacement pipes are the same size and dimensions as the culvert pipes originally in place. The only difference is that the new pipes are in *55 much better condition than the pre-1990 pipes. Surface water from the Lee Creek Hollow flows downhill into a ditch-line on the south side of County Route 17. The water then travels through the two culverts beneath County Route 17 to the southeastern edge of claimants’ new property line resulting from the purchase made in 1999. It is at this location that the twenty-four inch pipe which had once been an open channel connects to the eighteen inch pipe that Mr. Peters put in place after the June 1998 flood.
Dr. George A. Hall, respondent’s Standards Manuals and Research Engineer, investigated the scene to make a professional determination of the cause for the flood. He viewed and photographed the drainage structures, interviewed witnesses, and measured the headwater depth on all pipes so he could make drainage calculations. Dr. Hall used a United States Geological Survey (USGS) topographic map of the area to enable him to create an outline of the drainage area to determine the rainfall runoff that would be expected from the drainage area to run through the drainage structure on claimants’ property. Dr. Hall also contacted the Corps of Engineers at the Belleville dam located just a few miles from the claimants’ home to obtain rainfall information for June 28 and 29, 1998. This information enabled Dr. Hall to reconstruct the water runoff that occurred on these two dates. Based upon this data, Dr. Hall concluded that the claimants’ premise that the respondent had caused their flooding problem was false. Dr. Hall testified that respondent had no choice but to use the south side of County Route 17 to drain the water from Lee Creek Hollow. Dr. Hall stated that the south side of County Route 17 has a very steep bank cut out of rock and a very small channel for water flow. Furthermore, the pipe coming down the hill of Lee Creek Hollow is six feet in diameter and is more than adequate to handle the water draining down this hill. This pipe is thirty to forty feet from respondent’s right of way and was actually installed by a local property owner. Dr. Hall spoke to the property owner and took photographs of this large pipe. The six foot pipe runs down the hill and connects into respondent’s pipe which was installed underneath County Route 17 in 1990, during a re-paving job. After his review and analysis of the drainage areas to the east and the west of County Route 17, Dr. Hall concluded that the respondent did not create claimants’ flooding problem by replacing the pipe underneath County Route 17. It is his opinion that within a reasonable degree of engineering certainty the flood damage to the claimants’ home and property was caused by three contributing factors:
First, Mr. Peter’s placed an eighteen inch pipe inside a 2 ft. x 2 ft. open culvert in his back yard and then covered it over. By doing so, he reduced the cross-section of the open drainage channel and reduced the amount ofwater which can flow through it. This water then flows from the channel to a culvert that runs underneath WV Route 68 and eventually empties into the Ohio River. Second, Mr. Peter’s further reduced water flow through the concrete channel underneath his home by placing a pipe in it. In Dr. Hall’s opinion, this contributed to the claimants’ flooding. Dr. Hall also stated that the railroad company’s culvert which is clogged up with debris and improperly maintained was also a contributing factor to the flooding on the claimants’ property. Finally, Dr. Hall testified that the rainfall on June 28 and 29, 1998, was so heavy that no drainage system made could have handled all of the water at this location. According to records kept by the Corps of Engineers at the Belleville Dam, four inches of rain fell on and around the claimants’ property between 4:00 p.m. and 6:30 p.m. on June 28,1998. Then, five and one-halfinches fell on June 29, 1998. This was a total of nine and one-half inches of rain in a twenty-four hour period. According to Dr. Hall, this is a storm which cannot be measured in a one-hundred *56 year interval, but in a one-thousand year interval. He stated that this is the type of storm for which dams are built to withstand.
Dr. Hall also explained that both the respondent and the claimants are having flood problems due to the failure of the railroad to maintain its drainage structure so water backs up from that system onto WVRoute68 and then onto claimants’property at the front of their residence. Photographs depict the clogged condition of the drainage structure on the property of the railroad.
To hold the respondent liable for flood damage to property, a claimant must establish by a preponderance of the evidence that respondent was negligent in protecting the property from foreseeable flood damage. Haught v. Dept. of Highways, 13 Ct. Cl. 237 (1980). Respondent mustprovide adequate drainage of surface water and culverts to carry away the drainage must be maintained in a reasonable state of repair. Id.
In determining whetherthis standard hasbeenmet, the Court has considered certain factors to determine whether the flood damage was foreseeable. These factors include: whether an unusually heavy rainfall occurred prior to the flood, Hudson v. Dept. of Highways, 15 Ct. Cl. 183 (1983); whether a water line break contributed to the flood, Burger v. Dept. of Highways, 16 Ct. Cl. 41 (1986), and whether the respondent was informed of the drainage problem prior to the flooding, and refused timely to correct the problem. Johnson v. Dept. of Highways, 13 Ct. Cl. 380 (1981).
After a careful review of the record in this claim, the Court concludes that the claimants did not establish by a preponderance of the evidence that the respondent was negligent in its maintenance of the drainage structures along County Route 17. The claimants did not establish by a preponderance of the evidence that the respondent had an inadequate drainage system that contributed in any way to the claimants’ flood damage. The evidence does not substantiate claimants premise that the respondent had caused or contributed to their flooding by directing the flow of water down the hill along County Route 17. It is evident that the claimants had flooding and that some of the water may have come down the hill along County Route 17, but claimants did not present any evidence that the respondent failed to provide an adequate drainage system. Finally, both parties do agree that the storms on June 28, 1998 and June 29,1998 were extremely heavy. The Army Corps of Engineers at the Belleville dam which is only a few miles from the claimants’ home recorded a rainfall that can only be measured on the basis of a one-thousand year storm. No drainage system could handle this amount of rainfall in a twenty-four hour period. The rainstorm that resulted in the flooding of the claimants’ property was not foreseeable.
After having reviewed all of the evidence in this claim, the Court has determined that there were many factors that brought about the flooding on their property in June 1998. The amount of the rainfall, the changes in the drainage structures on claimants’ property, the fact the railroad does not maintain its drainage structure, and the natural lay of the land above claimants’ property all combined to bring about the flood that occurred on June 28 and 29, 1998. The evidence established that the replacement of the two drainage structures on County Route 17 by respondent did not bring about the flood which occurred on June 28 and 29,1998. Therefore, the Court of the is of the opinion that respondent is not liable for the flood damages to claimants’ property.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.
*57 (The Honorable Judge Robert M. Steptoe participated in the hearing of this claim but not in the preparation of this opinion. The Honorable Judge B. Hays Webb, II, participated in the decision and the preparation of this opinion but he was not present at the hearing.)